**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SULE S. OSEI,

          Petitioner,

v.

KAREN BALICKI, et al.,

          Respondents.

Civil Action No. 11-4273(AET)

OPINION

RECEIVED
SEP 26 2014
AT 8:30_____M
WILLIAM T. WALSH
CLERK

**APPEARANCES:**

Sule S. Osei
South Woods State Prison
215 Burlington Road
Bridgeton, NJ 08302
    Petitioner pro se

Monica L. do Outeiro, Esq.
Monmouth County Prosecutor's Office
132 Jerseyville Avenue
Freehold, NJ 07728
    Counsel for Respondents

**THOMPSON**, District Judge

    Petitioner Sule Osei, a prisoner currently confined at South Woods State Prison in Bridgeton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Karen Balicki and the Attorney General of the State of New Jersey.

    For the reasons stated herein, the Petition shall be denied.

I. BACKGROUND

Following his arrest on December 1, 2007, Petitioner was indicted in Monmouth County, New Jersey, on charges of third-degree possession of a controlled dangerous substance ("CDS") (heroin), N.J.S.A. 2C:35-10a(1) (count one); third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5b(3) (count two); third-degree distribution of a CDS, N.J.S.A. 2C:35-5b(3) (count three); third-degree possession of a CDS on or within 1000 feet of school property, N.J.S.A. 2C:35-7 (count four); third-degree distribution of a CDS on or within 1000 feet of school property, N.J.S.A. 2C:35-7 (count five); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2a(2) (count six). (Answer, Ex. 10, Indictment 08-05-1132.)

At a pre-trial suppression hearing, and at trial, Officer Gabrielle Carrasquillo of the Asbury Park Police Department described the circumstances of Petitioner's arrest. Officer Carrasquillo testified that he was working in the Street Crimes Unit, a group of plain clothes officers who are trained and assigned to combat open-air drug sales in areas of high narcotics trafficking. Officer Eddy Raisin testified similarly. Both had been assigned to the Street Crimes Unit for several years and had been involved in over 100 narcotics related arrests.[1]

On December 1, 2007, at approximately 6:15 p.m., both were patrolling on the 1500 block of Springwood Avenue, known to them to be an area of high narcotics trafficking.[2] The area was well lit from lights in business establishments and from street lamps. The officers observed Glenn Miller standing outside a pizza restaurant, about ten to fifteen feet from them, slowly looking from side to side as if waiting for somebody. A few minutes later, both officers

---

[1] This summary of the testimony of Officers Carrasquillo and Raisin is taken from the transcripts of the suppression hearing, (Answer, Exs. 1-3), and of the trial, (Answer, Ex. 5).

[2] At trial, Officer Raisin testified to the "drug area" nature of the neighborhood in response to cross-examination by defense counsel. (Answer, Ex. 5, Part A, Tr. of Trial, at 43-49.)

2

saw Petitioner cross Springwood Avenue and approach Miller.

Officer Carrasquillo testified that he saw Miller step forward and reach his open right hand forward as Petitioner handed him a white rectangular glassine packet, which Officer Carrasquillo suspected, based on his training and experience, contained heroin. Both officers then observed Miller hand Petitioner an unknown amount of U.S. currency. Officer Raisin also testified that he believed, based on his training and experience, that he had just observed a drug transaction. Miller and Petitioner then shook hands and walked away in separate directions.

Officer Raisin approached Miller and identified himself as a police officer. He told Miller what he had seen and that he suspected that Miller had drugs in his closed fist. Miller said "You all got me," opened his hand, and gave Officer Raisin a glassine packet containing suspected heroin. The glassine bag was marked "Inside Man" in red ink. Officer Raisin then placed Miller under arrest.

Meanwhile, Officer Carrasquillo approached Petitioner and identified himself as a police officer. Petitioner began to run away, but Officer Carrasquillo caught up to him within about 35 feet, grabbed him, and handcuffed him. As Officer Carrasquillo was cuffing Petitioner, he noticed that Petitioner had a $10 bill in his left hand, which the officer confiscated. Officer Carrasquillo then searched Petitioner's person, patting him down for weapons. Officer Raisin yelled over that Miller had heroin on him and Officer Carrasquillo then felt something in Petitioner's jacket pocket which he removed. The object in Petitioner's jacket pocket was an orange pill bottle containing two bundles of glassine packets stamped "Inside Man," nineteen in all, containing a white powdery substance, later established to be heroin. Officer Carrasquillo also secured an additional $69 found on Petitioner.

After hearing testimony from the police officers and Petitioner, the trial court denied

Petitioner's pre-trial motion to suppress, finding, first, that the officers had probable cause to believe that a narcotics transactions had taken place on the street in front of them and that there was no opportunity to secure a warrant before arresting Petitioner and Miller and, second, that the seizure of the drugs and money from Miller and Petitioner was incident to a lawful arrest and, therefore, proper. (Answer. Ex. 9, Tr. of Suppression Hrg., Ruling, at 9-11.)

Following a jury trial, Petitioner was convicted on counts one, two, four, and six. That is, Petitioner was convicted of the various counts of "possession" and "possession with intent to distribute," but not of "distribution." The trial court sentenced Petitioner to an aggregate term of seven years' imprisonment. The Superior Court of New Jersey, Appellate Division, affirmed the conviction and sentence, State v. Osei, 2011 WL 242106 (N.J. Super. App. Div. Jan. 27, 2011), and the Supreme Court of New Jersey denied certification, State v. Osei, 207 N.J. 35 (2011).

This Petition followed. Here, Petitioner asserts the following grounds for relief: (1) Petitioner's right to due process was violated by inaccurate jury instructions on the law of intent to distribute;[3] (2) Petitioner's right to due process was violated by the State's failure to show that its witness had first-hand knowledge of the facts about which he testified; (3) Petitioner's rights under the Fourth Amendment were violated by a warrantless search and seizure; and (4) Petitioner's right to due process was violated by the admission of unduly prejudicial location-profiling evidence. Petitioner exhausted all of these claims on direct appeal, but the Appellate Division found "that none of them are of sufficient merit to warrant a discussion in a written opinion." 2011 WL 242106 at *2.

---

[3] Petitioner purports to assert each of these claims under both the U.S. and New Jersey Constitutions. It is well-established, however, that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, this Court will address only those claims asserted under federal law.

Respondents have answered and this matter is now ready for decision.

## II. 28 U.S.C. § 2254

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas custody on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although

5

the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Williams, 529 U.S. at 409. "This standard ... is 'difficult to meet': To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 133 S.Ct. 1781, 1786-87 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87 (2011)).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).

### III. ANALYSIS

A. Evidentiary Issues

Petitioner contends that his right to due process of law was violated by the admission of the Officer Carrasquillo's testimony that he saw Petitioner and Miller shake hands and exchange heroin, without showing that the witness had first-hand knowledge that heroin was transferred, and by the admission of unduly-prejudicial location profiling evidence regarding the fact that the transaction took place in an area known for drug trafficking.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (citation omitted)). Accordingly, Petitioner cannot obtain relief for the alleged errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. See Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal

trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Cf. Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (holding that "the power of the State to regulate procedures under which its laws are carried out ... is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" (citations and internal quotation marks omitted)). The Supreme Court "has defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. U.S., 493 U.S. 342, 352 (1990).

At trial, Officer Carrasquillo testified to events he observed; in the course of that testimony, he stated that Miller was standing and looking around "as if he was waiting for someone," (Ans., Ex. 5, Tr. of Trial at 95), and further that Petitioner handed Miller a white glassine packet that he believed to be "CDS, heroin," (Id. at 97). In 2011, while Petitioner's petition for certification was pending before the Supreme Court of New Jersey, that court undertook a survey of its own state-law precedents and analyzed, in detail, in the context of police officers testifying about their observations in suspected drug transactions, the line between admissible factual testimony based on first-hand observations of events, inadmissible lay opinion testimony interpreting the witnessed factual events, and admissible expert testimony--where the transactions at issue occurred in something other than a straightforward manner--where a jury might require expert assistance to interpret the events. See generally State v. McLean, 205 N.J. 438 (2011). It is arguable, under the standards set forth in McLean, that Officer Carrasquillo's testimony constituted impermissible lay opinion testimony under state law. That possibility,

7

in McLean, that Officer Carrasquillo's challenged testimony constituted impermissible lay opinion testimony under state law. That possibility, however, does not entitle Petitioner to federal habeas relief. To the contrary, this Court finds that even if an error of state law did occur, the error did not infect Petitioner's trial with fundamental unfairness. Officer Carrasquillo testified as to his experience and the basis for his conclusions, all of which were borne out by other evidence.

Officer Raisin's testimony regarding the fact that the transaction took place in a high-crime area was elicited on cross-examination by Petitioner's and his co-defendant's counsel. Moreover, such testimony is clearly admissible under New Jersey law. See State v. McLean, 205 N.J. at 459 (collecting cases). Accordingly, it is difficult to entertain the notion that the evidence was fundamentally unfair to Petitioner.

For all of the foregoing reasons, Petitioner is not entitled to relief on his claims of evidentiary error.

B.     The Search and Seizure Issue

Petitioner contends that there was no probable cause to arrest him and that the search incident to his arrest was, therefore, unlawful.

The Fourth Amendment to the U.S. Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, see Mapp v. Ohio, 367 U.S. 643 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV.

Generally speaking, evidence gained through a Fourth Amendment violation may not be used against a defendant at trial. See Mapp v. Ohio, 367 U.S. at 654-55; Weeks v. United States, 232 U.S. 383, 391-93 (1914). This "exclusionary rule" is a judicially-created remedy to safeguard Fourth Amendment rights by deterring police conduct that violates those rights. Stone v. Powell, 428 U.S. 465, 486 (1976). With respect to collateral review, however, the Supreme Court has found that the costs of the exclusionary rule outweigh its benefits. Therefore,

> "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." [428 U.S. at 494.] While the federal courts are not thus deprived of jurisdiction to hear the claim, they are -- for prudential reasons -- restricted in their application of the exclusionary rule. Id. at 494 n. 37, 96 S.Ct. 3037.

Marshall v. Hendricks, 307 F.3d 36, 81-82 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003). "Whether the petitioner actually took advantage of the opportunity is irrelevant; so long as the opportunity was available, the bar against raising the Fourth Amendment claims on collateral review applies." Jackson v. Diguglielmo, Civil No. 03-5398, 2006 WL 1147517, *6 (E.D. Pa. 2006) (citation omitted). Moreover, "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the bar." Gilmore v. Marks, 799 F.2d 51, 57 (3d Cir. 1986).

Here, Petitioner had a full and fair opportunity to present his Fourth Amendment claim to the state courts, which he pursued both through a pre-trial motion to suppress, which included an evidentiary hearing, and on direct appeal. Accordingly, this Court will not grant federal habeas relief on this claim.

C.   Jury Instructions

Petitioner contends that the trial court violated his right to due process by failing to

9

provide accurate jury instructions regarding the law of intent to distribute. More particularly, Petitioner contends that the trial court (1) failed to instruct the jury on each element of the crime of possession of a controlled dangerous substance with intent to distribute and (2) failed to inform the jurors that the only basis on which they could convict on intent to distribute was if they found him guilty of actual distribution, because the state allegedly "conceded" that the possession of 19 bags of heroin could not provide a factual predicate for intent in the absence of expert testimony.

Generally, questions relating to jury instructions are matters of state law not cognizable in federal habeas review. See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S. 145 (1977). Thus, even a jury instruction that is inconsistent with state law does not necessarily merit federal habeas relief.

Where a federal habeas petitioner seeks relief based upon the jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted). Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997).

Where such a constitutional error has occurred, it generally is subject to "harmless error"

analysis. Neder v. United States, 527 U.S. 1, 8-11 (1999); Smith v. Horn, 120 F.3d at 416-17. "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Smith v. Horn, 120 F.3d at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotation marks and citations omitted).

Thus, even if there is "'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (internal citations omitted).

Here, it is undisputed that the trial court used the New Jersey Model Jury Charges and there is no suggestion that they are generally deficient. Petitioner contends, however, that the charges should have been tailored to the prosecution's legal theory of the case. While Petitioner correctly notes that the prosecutor acknowledged that it would have been necessary to produce expert testimony in order to convict Petitioner for possession with the intent to distribute the nineteen bags found on Petitioner at the time of his arrest, the government nevertheless properly proceeded with the theory that Petitioner had "possessed" unlawfully all twenty bags (the nineteen on him at his arrest and the one involved in the transaction with Miller), and that he had possessed with intent to distribute (and had distributed) the one bag involved in the transaction

with Miller. In other words, the government properly linked both the single bag involved in the drug transaction and the nineteen bags found on Petitioner's person to the simple possession charges, and linked only the one bag involved in the drug transaction to the possession-with-intent and distribution charges. Similarly, in its instructions, the trial court carefully distinguished which packets of heroin were relevant to each of the "possession," "possession with intent to distribute," and "distribution" charges. (Answer, Ex. 7, Tr. of Jury Instructions, at 31-32 and 45-48.) Thus, Petitioner's contention of error with respect to the specific bags of heroin applicable to each charge is simply, factually, incorrect.

Also unavailing is Petitioner's argument that the jury should have been charged on the law of attempt. The trial court accurately instructed the jury that "'Distribute' means transfer, actual, constructive, or attempted, from one person to another of a controlled dangerous substance.'" (Answer, Ex. 7, Tr. of Jury Instructions, at 22-23.) See N.J.S.A. 2C:35-2. New Jersey law defines "distribution" as including any actual, constructive, or attempted transfer. Thus, the trial court's instruction strictly complied with the statute and there was no error. As Petitioner was not charged with "attempting" to possess with intent to distribute, state law does not require that the jury charge include a definition of "attempt." See State v. Showell, 2014 WL 3905601, *5-*6 (N.J. Super. App. Div. Aug. 12, 2014). Accordingly, there was no error under state law, and no federal due process violation. Petitioner is not entitled to federal habeas relief on his challenges to the jury instructions.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citation omitted).

Here, jurists of reason would not disagree with this Court's resolution of Petitioner's claims. No certificate of appealability shall issue.

## V. CONCLUSION

For the reasons set forth above, the Petition shall be denied. An appropriate order follows.

_____
Anne E. Thompson
United States District Judge

Dated: 9/25/14